UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP
Attorneys for Cohn Lifland Pearlman
 Herrmann & Knopf LLP
Park 80 West-Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
(201)845-9600
Our File: 39843-3

In Re:

ANNA MANUKIAN ASLANIAN,

        Debtor.

Case No. 22-17956

Chapter 13

Judge: John K. Sherwood

Hearing Date: December 8, 2022

**CERTIFICATION OF JEFFREY W. HERRMANN, ESQ., ON BEHALF OF COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP OBJECTING TO CONFIRMATION OF DEBTOR'S PLAN**

Jeffrey W. Herrmann, Esq., hereby certifies:

1.  I am an attorney-at-law of the State of New Jersey and a member of the law firm of Cohn Lifland Pearlman Herrmann & Knopf LLP, counsel for creditors, Cohn Lifland Pearlman Herrmann & Knopf LLP ("Cohn Lifland").

2.  I submit this certification in support of Cohn Lifland's objection to confirmation of the Debtor's Chapter 13 plan.

3.  On August 13, 2019, a judgment was entered (J-116887-2019) against Vatche Aslanian, debtor's ex-spouse, in the amount of $68,029.36 plus interest and costs.  Debtor seeks to strip this lien.

4.      While it may theoretically be true that, under certain circumstances, a wholly
unsecured judgment lien may be "stripped off", we do not believe, in the case at bar, that the lien
held by Cohn Lifland, is wholly unsecured.  This is because there appears to be substantially
more equity in the debtor's property than stated on her petition.

5.      According to the Proof of Claim filed by the first mortgage holder Ajax E. Master
Trust c/o Gregory Funding LLC, there is a balance due in the amount of $232,983.45 as of the
date of the Debtor's petition filing.

6.      Debtor's petition indicates that the second mortgage held by Discover Home
Loans, there is a balance due in the amount of $99,930.69.

7.      A judgment lien was entered on April 10, 2019 (J 045659-19), in the amount of
$82,851.09, by Finnerty Canda & Concannon PC.

8.      Cohn Lifland's judgment would be the third lien on the debtor's property.

10.      We disagree with Debtor's claim in Schedule "A" of his petition that his
residence at 413 The Fenway, River Edge, New Jersey, is worth only $377,200.

11.      Attached hereto as Exhibit "A" is a copy of an Appraisal prepared on November
9, 2022 by Christopher Belon, SCGREA and Robert J. Belon, MAI, Certified General
Appraisers, which values the subject property at $520,000.

12.      Accordingly, it is respectfully requested that this Court hold a hearing, on the date
of the confirmation hearing or such other date as the Court may deem appropriate, with respect
to the value of Debtor's residence.  Clearly, if the Court should determine that the actual value of
the debtor's residence is more than $483,752.99 (the sum of the four liens described above), then
Cohn Lifland's security interest would continue intact under 11 U.S.C. 1322(b)(2).  Further, even
if a "strip off" were proper, it could only be effective once the Plan was paid in full.

13.  Therefore, it is respectfully requested that the Court deny confirmation of the Debtor's

Plan.

I certify that the foregoing statements made by me are true. I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.

<div style="margin-left: 40%">

COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
*Attorneys for Cohn Lifland Pearlman*
*Herrmann & Knopf LLP*


By: <u>*/s/ Jeffrey W. Herrmann*</u>
Jeffrey W. Herrmann, Esq.
A Member of the Firm

</div>

Dated: November 30, 2022

# EXHIBIT "A"

Mid-Atlantic Appraisal, Inc.
PO Box 455
Colts Neck, NJ 07722
(732) 616-8906


11/11/2022

Cohn Lifland Pearlman Herrmann & Knopf LLP
Park 80 West-Plaza One, 250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663



Re: Property:          413 the Fenway
                       River Edge, NJ 07661
    Borrower:          NA
    File No.:          221109226


Opinion of Value: $  520000
Effective Date:      11/09/2022


In accordance with your request, we have appraised the above referenced property.  The report of that appraisal is
attached.

The purpose of the appraisal is to develop an opinion of market value for the property described in this appraisal
report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and
city, and an economic analysis of the market for properties such as the subject.  The appraisal was developed and the
report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The opinion of value reported above is as of the stated effective date and is contingent upon the certification and
limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me or any of my staff if we can be of additional
service to you.



Sincerely,



Christopher Belon, SCGREA
Certified General Appraiser
License or Certification #: 42RG00227700
State: NJ      Expires: 12/31/2023
cbelon@optonline.net

| Borrower | NA | | | File No. | 221109226 | |
|---|---|---|---|---|---|---|
| Property Address | 413 the Fenway | | | | | |
| City | River Edge | County | Bergen | State | NJ | Zip Code | 07661 |
| Lender/Client | Cohn Lifland Pearlman Herrmann & Knopf LLP | | | | | |

## TABLE OF CONTENTS



| | |
|---|---|
| Letter of Transmittal | 1 |
| USPAP Identification | 2 |
| GP Residential | 3 |
| GP Residential Certifications Addendum | 6 |
| General Text Addendum | 8 |
| Location Map | 11 |
| Aerial Map | 12 |
| Flood Map | 13 |
| Tax Map Excerpt | 14 |
| Tax Record - Page 1 | 15 |
| Tax Record - Page 2 | 16 |
| Subject Photos | 17 |
| Comparable Photos 1-3 | 18 |
| Appraiser Information - Page 1 | 19 |
| Appraiser Information - Page 2 | 20 |
| Appraisers License | 21 |
| E&O Declarations Page | 22 |

| Borrower | NA | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 413 the Fenway | | | | File No. | 221109226 |
| City | River Edge | County | Bergen | State | NJ | Zip Code 07661 |
| Lender/Client | Cohn Lifland Pearlman Herrmann & Knopf LLP | | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Report is one of the following types:

☒ Appraisal Report    (A written report prepared under Standards Rule 2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted    (A written report prepared under Standards Rule 2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report,
Appraisal Report    restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no  personal interest with respect to the parties involved.
- Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

## Reasonable Exposure Time    (USPAP defines Exposure Time as the estimated length of time that the property interest being
appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.)
My Opinion of Reasonable Exposure Time for the subject property at the market value stated in this report is:    1-3 months

## Comments on Appraisal and Report Identification
Note any USPAP-related issues requiring disclosure and any state mandated requirements:

**APPRAISER:**

Signature:

Name:  Christopher Belon, SCGREA
Certified General Appraiser
State Certification #:    42RG00227700
or State License #:
State:  NJ    Expiration Date of Certification or License:  12/31/2023
Date of Signature and Report:  11/11/2022
Effective Date of Appraisal:  11/09/2022
Inspection of Subject:  ☐ None  ☐ Interior and Exterior  ☒ Exterior-Only
Date of Inspection (if applicable):  11/09/2022

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature:

Name:  Robert J. Belon, MAI
Certified General Appraiser, MAI
State Certification #:    42RG00091800
or State License #:
State:  NJ    Expiration Date of Certification or License:  12/31/2023
Date of Signature:  11/11/2022
Inspection of Subject:  ☐ None  ☐ Interior and Exterior  ☒ Exterior-Only
Date of Inspection (if applicable):  11/9/2022

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 221109226

## SUBJECT

| | | |
|---|---|---|
| Property Address: 413 the Fenway | City: River Edge | State: NJ  Zip Code: 07661 |
| County: Bergen | Legal Description: Block: 909 Lot: 15 | |

Assessor's Parcel # : 52-00909-0000-00015

Tax Year: 2021   R.E. Taxes: $ 10,235   Special Assessments: $ N/A   Borrower (if applicable):   NA

Current Owner of Record: Aslannian Living Trust   Occupant: ☒ Owner ☐ Tenant ☐ Vacant ☐ Manufactured Housing

Project Type: ☐ PUD ☐ Condominium ☐ Cooperative ☒ Other (describe) Single Family   HOA: $   ☐ per year ☐ per month

Market Area Name: River Edge   Map Reference: 35614   Census Tract: 0482.00

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)

This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective

Approaches developed for this appraisal: ☒ Sales Comparison Approach ☒ Cost Approach ☐ Income Approach   (See Reconciliation Comments and Scope of Work)

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use: Determine "as-is" market value as of 11/09/2022.

Intended User(s) (by name or type):   Cohn Lifland Pearlman Herrmann & Knopf LLP

Client: Cohn Lifland Pearlman Herrmann & Knopf LLP   Address: Park 80 West-Plaza One, 250 Pehle Avenue, Suite 401, Saddle Brook, NJ 07

Appraiser: Christopher Belon, SCGREA   Address:   PO Box 455, Colts Neck, NJ 07722

## MARKET AREA DESCRIPTION

| | | | Predominant Occupancy | One-Unit Housing | | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|---|---|
| Location: | ☐ Urban | ☒ Suburban | ☐ Rural | | PRICE | AGE | One-Unit 100 % | ☒ Not Likely |
| Built up: | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | ☒ Owner | $(000) | (yrs) | 2-4 Unit % | ☐ Likely * ☐ In Process * |
| Growth rate: | ☐ Rapid | ☒ Stable | ☐ Slow | ☐ Tenant | 250 Low | 0 | Multi-Unit % | * To: |
| Property values: | ☒ Increasing | ☐ Stable | ☐ Declining | ☒ Vacant (0-5%) | 1,350 High | 120 | Comm'l % | |
| Demand/supply: | ☐ Shortage | ☒ In Balance | ☐ Over Supply | ☐ Vacant (>5%) | 635 Pred | 75 | Vacant % | |
| Marketing time: | ☒ Under 3 Mos. | ☐ 3-6 Mos. | ☐ Over 6 Mos. | | | | | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends):   Market values in the subjects neighborhood are currently stable. Marketing time for a typically single family home located within the Subject's neighborhood is 1-3 months. Financing is primarily through conventional mortgages with other types of financing also available to qualified applicants.

The subject city is 1.88 square miles. The city is generally bound to the north and west by the Borough of Paramus, to the south by the city of Hackensack and to the east by the Borough of New Milford.

## SITE DESCRIPTION

Dimensions: 60' x 110'   Site Area:   6,600 sf

Zoning Classification: R-1   Description: Residential (7,500 min lot size)

Zoning Compliance: ☐ Legal ☒ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning

Are CC&Rs applicable? ☐ Yes ☒ No ☐ Unknown   Have the documents been reviewed? ☐ Yes ☒ No   Ground Rent (if applicable) $   N/A/

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date: Single Family   Use as appraised in this report: Single Family

Summary of Highest & Best Use:   The highest and best use of the subject property is its current use as a single family home.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | Gradual Upward slope |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | | Street | Macadam | ☒ | ☐ | Size | Average |
| Gas | ☒ | ☐ | | Curb/Gutter | Concrete | ☒ | ☐ | Shape | Rectangular |
| Water | ☒ | ☐ | | Sidewalk | Concrete | ☒ | ☐ | Drainage | Appears adequate |
| Sanitary Sewer | ☒ | ☐ | | Street Lights | Overhead | ☒ | ☐ | View | Residential |
| Storm Sewer | ☒ | ☐ | | Alley | None | ☐ | ☐ | | |

Other site elements: ☐ Inside Lot ☒ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)

FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 34003C0191H   FEMA Map Date 8/28/2019

Site Comments:   The subjects is a legal nonconforming use within the R-1 zone that allows single family homes, however the site does not meet the 7,500 square foot minimum lot size bulk requirement which is common for the subjects development.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | | Exterior Description | | Foundation | | Basement | ☐ None | Heating | |
|---|---|---|---|---|---|---|---|---|---|
| # of Units | 1   ☐ Acc.Unit | Foundation | Block | Slab | 0% | Area Sq. Ft. | 768 | Type | FWA |
| # of Stories | 1.5 | Exterior Walls | brick,vinyl | Crawl Space | 0% | % Finished | 0 | Fuel | Gas |
| Type ☒ Det. ☐ Att. | | Roof Surface | Asphalt | Basement | 100% | Ceiling | Joists | | |
| Design (Style) | Cape Cod | Gutters & Dwnspts. | Aluminum | Sump Pump | ☒ N | Walls | Block | Cooling | |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | | Window Type | Thermopane | Dampness | ☒ N | Floor | Concrete | Central | Yes |
| Actual Age (Yrs.) | 82 | Storm/Screens | Screens | Settlement | None observed | Outside Entry | No | Other | |
| Effective Age (Yrs.) | 25 | | | Infestation | None observed | | | | |

| Interior Description | | Appliances | | Attic | ☐ None | Amenities | | Car Storage | ☐ None |
|---|---|---|---|---|---|---|---|---|---|
| Floors | Wd, tile/Avg | Refrigerator | ☒ | Stairs | ☒ | Fireplace(s) # | 0 | Woodstove(s) # | Garage # of cars (1 Tot.) |
| Walls | Drywall/Avg | Range/Oven | ☒ | Drop Stair | ☒ | Patio | Concrete | Attach. | |
| Trim/Finish | PaintedWood/Avg | Disposal | ☐ | Scuttle | ☒ | Deck | None | Detach. | |
| Bath Floor | Tile/Avg | Dishwasher | ☒ | Doorway | ☐ | Porch | None | Blt.-In | |
| Bath Wainscot | Tile,fiberglass/Avg | Fan/Hood | ☒ | Floor | ☐ | Fence | None | Carport | |
| Doors | Solid core/Avg | Microwave | ☒ | Heated | ☐ | Pool | None | Driveway | X |
| | | Washer/Dryer | ☒ | Finished | ☐ | | | Surface | Macadam |

Finished area above grade contains:   6 Rooms   3 Bedrooms   3 Bath(s)   1,280 Square Feet of Gross Living Area Above Grade

Additional features:   The subject has typical energy efficient item including thermopane windows and insulation.

Describe the condition of the property (including physical, functional and external obsolescence):   The subject was considered to be in average overall condition based on the appraisers exterior inspection. The appraiser has employed an extraordinary assumption that the interior condition of the subject is also in average overall condition as of the date of the exterior inspection. The GLA for the subject was obtained from the Bergen County Tax Board web site. The interior description including floors, walls, trim/finish, bath floor, bath wainscot and doors is based on NJMLS listings of similar homes located in the subject neighborhood, an extraordinary assumption was made that the interior description is accurate. There were no apparent deferred maintenance noted at the time of inspection.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP RESIDENTIAL   Form GPRES2 – "TOTAL" appraisal software by a la mode, inc. – 1-800-ALAMODE   3/2007

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 221109226

**TRANSFER HISTORY**

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): Tax records

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: There have been no sales indicated in |
|---|---|
| Date: 03/08/2019 | the Bergen County property records within the past 3 years. |
| Price: $1.00 | |
| Source(s): Doc#3197-32 | |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

## SALES COMPARISON APPROACH TO VALUE (if developed)
☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 413 the Fenway | 71 Lakeview St | | 180 Howland Ave | | 409 the Fenway | |
| | River Edge, NJ 07661 | River Edge, NJ 07661 | | River Edge, NJ 07661 | | River Edge, NJ 07661 | |
| Proximity to Subject | | 0.50 miles S | | 0.14 miles S | | 0.01 miles SW | |
| Sale Price | $ N/A | $ 530,000 | | $ 550,000 | | $ 578,000 | |
| Sale Price/GLA | $ /sq.ft. | $ 292.66 /sq.ft. | | $ 337.63 /sq.ft. | | $ 451.56 /sq.ft. | |
| Data Source(s) | Inspection | NJMLS#21023105 | | NJMLS#22004841 | | NJMLS#21043788 | |
| Verification Source(s) | Tax records | Deed#4401-157 | | Deed#4680-888 | | Deed#4542-1224 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | N/A | Cash; no concession | | Cash; no concession | | Cash; no concession | |
| Concessions | | DOM 20 | | DOM 9 | | DOM 1 | |
| Date of Sale/Time | N/A | s07/21; c07/21 | +26,500 | s04/22; c03/22 | | s12/21; c11/21 | +5,780 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Average | Average | | Average | | Average | |
| Site | 6,600 sf | 5,000 sf | | 8640 sf | | 8.985 sf | |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Cape Cod | Cape Cod | | Cape Cod | | Cape Cod | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 82 | 80 | | 82 | | 82 | 0 |
| Condition | Average | Average | | Average | | Good | -57,800 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | 0 | Total Bdrms Baths | 0 | Total Bdrms Baths | 0 |
| Room Count | 6  3  3 | 7  3  2.5 | +4,000 | 7  4  2 | +8,000 | 7  3  2 | +8,000 |
| Gross Living Area | 1,280 sq.ft. | 1,811 sq.ft. | -39,825 | 1,629 sq.ft. | -26,175 | 1,280 sq.ft. | |
| Basement & Finished | Full Basement | Full Basement | | Full Basement | | Full Basement | |
| Rooms Below Grade | Unfinished | finished | -15,000 | Partially finished | -7,500 | finished | -15,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/Central | FWA/Central | | FWA/Central | | FWA/Central | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 1 Car garage | Onsite parking | +5,000 | 1 car carport | +3,000 | 1 Car garage | |
| Porch/Patio/Deck | Patio | Deck | | deck,patio,gazebo | -3,000 | deck | |
| Pool | None | None | | None | | None | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -19,325 | ☐ + ☒ - | $ -25,675 | ☐ + ☒ - | $ -59,020 |
| Adjusted Sale Price of Comparables | | Net 3.6 % Gross 17.0 % | $ 510,675 | Net 4.7 % Gross 8.7 % | $ 524,325 | Net 10.2 % Gross 15.0 % | $ 518,980 |

Summary of Sales Comparison Approach   See text addendum

Indicated Value by Sales Comparison Approach $ 520,000

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE     3/2007

**GP RESIDENTIAL**

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 221109226

**COST APPROACH TO VALUE (if developed)**   ☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value):   The cost approach wasn't utilized in this
report due to the older age of the subject property and lack of recent vacant land sales to support the opinion of site value

| COST APPROACH | | | |
|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | = $ |
| Source of cost data: | DWELLING Sq.Ft. @ $ 0.00 | = $ |
| Quality rating from cost service: Effective date of cost data: | 0 Sq.Ft. @ $ | = $ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | Sq.Ft. @ $ | = $ |
| | Sq.Ft. @ $ | = $ |
| | Sq.Ft. @ $ | = $ |
| | | = $ |
| | Garage/Carport Sq.Ft. @ $ | = $ |
| | Total Estimate of Cost-New | = $ |
| | Less Physical Functional External | |
| | Depreciation | = $( ) |
| | Depreciated Cost of Improvements | = $ |
| | "As-is" Value of Site Improvements | = $ |
| | | = $ |
| | | = $ |
| Estimated Remaining Economic Life (if required): Years | INDICATED VALUE BY COST APPROACH | = $ |

**INCOME APPROACH TO VALUE (if developed)**   ☒ The Income Approach was not developed for this appraisal.

Estimated Monthly Market Rent $ N/A   X Gross Rent Multiplier   = $   Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM):

**PROJECT INFORMATION FOR PUDs (if applicable)**   ☐ The Subject is part of a Planned Unit Development.

Legal Name of Project:   N/A

Describe common elements and recreational facilities:   N/A

Indicated Value by: Sales Comparison Approach $   520,000   Cost Approach (if developed) $   Income Approach (if developed) $

Final Reconciliation   All three approaches to value were considered. Income approach was not utilized due to insufficient data. The cost approach
wasn't utilized in this report due to the older age of the subject property and lack of recent vacant land sales to support the opinion of
site value. All weight was placed on sales comparison, as it best reflects the action of typical buyers and sellers.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to
the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:   This appraisal is made
"as is"

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

**Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions,
and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject
of this report is: $   520,000   , as of:   11/09/2022   , which is the effective date of this appraisal.
If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.**

A true and complete copy of this report contains   22   pages, including exhibits which are considered an integral part of the report. This appraisal report may not be
properly understood without reference to the information contained in the complete report.

Attached Exhibits:

| | | | | |
|---|---|---|---|---|
| ☒ Scope of Work | ☒ Limiting Cond./Certifications | ☒ Narrative Addendum | ☒ Photograph Addenda | ☒ Sketch Addendum |
| ☒ Map Addenda | ☒ Additional Sales | ☐ Cost Addendum | ☒ Flood Addendum | ☐ Manuf. House Addendum |
| ☐ Hypothetical Conditions | ☒ Extraordinary Assumptions | ☐ | | |

Client Contact:   Client Name:   Cohn Lifland Pearlman Herrmann & Knopf LLP

E-Mail:   Address:   Park 80 West-Plaza One, 250 Pehle Avenue, Suite 401, Saddle Brook, I

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| | |
| Appraiser Name:   Christopher Belon, SCGREA | Supervisory or Co-Appraiser Name:   Robert J. Belon, MAI |
| Company:   Mid-Atlantic Appraisal, Inc. | Company:   Mid-Atlantic Appraisal, Inc. |
| Phone: (732) 616-8906   Fax: (732) 780-2774 | Phone:   732-780-8808   Fax:   732-780-2774 |
| E-Mail: cbelon@optonline.net | E-Mail:   bobbelon@optonline.net |
| Date of Report (Signature):   11/11/2022 | Date of Report (Signature):   11/11/2022 |
| License or Certification #:   42RG00227700   State:   NJ | License or Certification #:   State:   NJ |
| Designation:   Certified General Appraiser | Designation:   Certified General Appraiser, MAI |
| Expiration Date of License or Certification:   12/31/2023 | Expiration Date of License or Certification:   12/31/2023 |
| Inspection of Subject: ☐ Interior & Exterior ☒ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☒ Exterior Only ☐ None |
| Date of Inspection:   11/09/2022 | Date of Inspection:   11/9/2022 |

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP RESIDENTIAL   Form GPRES2 — "TOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE   3/2007

# Assumptions, Limiting Conditions & Scope of Work

File No.: 221109226

| Property Address: 413 the Fenway | City: River Edge | State: NJ | Zip Code: 07661 |
|---|---|---|---|
| Client: Cohn Lifland Pearlman Herrmann & Knopf LLP | Address: Park 80 West-Plaza One, 250 Pehle Avenue, Suite 401, Saddle Brook, NJ 07 | | |
| Appraiser: Christopher Belon, SCGREA | Address: PO Box 455, Colts Neck, NJ 07722 | | |

**STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS**

– The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis
of it being under responsible ownership.

– The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch
is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.

– If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other
data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

– The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

– If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best
use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction
with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance
value, and should not be used as such.

– The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence
of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the
normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any

hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous

wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and

makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any

such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the

appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of
the property.

– The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items
that were furnished by other parties.

– The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

– If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report
and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.

– An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the
client does not become a party to the appraiser–client relationship. Any persons receiving this appraisal report because of disclosure requirements
applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.

– The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.

– An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non–invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence
of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors
are encouraged to engage the appropriate type of expert to investigate.


The Scope of Work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by
the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the Intended Use, the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.


**Additional Comments (Scope of Work, Extraordinary Assumptions, Hypothetical Conditions, etc.):  See text addenda**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP** RESIDENTIAL

# Certifications

| | | File No.: 221109226 |
|---|---|---|

| Property Address: 413 the Fenway | City: River Edge | State: NJ | Zip Code: 07661 |
|---|---|---|---|
| Client: Cohn Lifland Pearlman Herrmann & Knopf LLP | Address: Park 80 West-Plaza One, 250 Pehle Avenue, Suite 401, Saddle Brook, NJ 07 | | |
| Appraiser: Christopher Belon, SCGREA | Address: PO Box 455, Colts Neck, NJ 07722 | | |

**APPRAISER'S CERTIFICATION**
I certify that, to the best of my knowledge and belief:
– The statements of fact contained in this report are true and correct.
– The credibility of this report, for the stated use by the stated user(s), of the reported analyses, opinions, and conclusions are limited only by
the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
– I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
– I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
– My engagement in this assignment was not contingent upon developing or reporting predetermined results.
– My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction
in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
– My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
– I did not base, either partially or completely, my analysis and/or the opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.
– Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
– Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification.

Additional Certifications:

**DEFINITION OF MARKET VALUE \*:**
Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:
1. Buyer and seller are typically motivated;
2. Both parties are well informed or well advised and acting in what they consider their own best interests;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.
   \* This definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), Federal Deposit Insurance Corporation (FDIC), the Office of Thrift Supervision (OTS),    and

| Client Contact: | Client Name: Cohn Lifland Pearlman Herrmann & Knopf LLP | |
|---|---|---|
| E-Mail: | Address: Park 80 West-Plaza One, 250 Pehle Avenue, Suite 401, Saddle Brook, I | |

| **APPRAISER** | **SUPERVISORY APPRAISER (if required)** or CO-APPRAISER (if applicable) |
|---|---|
| *(signature)* Chris Belon | *(signature)* Robert J. Belon |
| Appraiser Name: Christopher Belon, SCGREA | Supervisory or Co-Appraiser Name: Robert J. Belon, MAI |
| Company: Mid-Atlantic Appraisal, Inc. | Company: Mid-Atlantic Appraisal, Inc. |
| Phone: (732) 616-8906   Fax: (732) 780-2774 | Phone: 732-780-8808   Fax: 732-780-2774 |
| E-Mail: cbelon@optonline.net | E-Mail: bobbelon@optonline.net |
| Date Report Signed: 11/11/2022 | Date Report Signed: 11/11/2022 |
| License or Certification #: 42RG00227700   State: NJ | License or Certification #:   State: NJ |
| Designation: Certified General Appraiser | Designation: Certified General Appraiser, MAI |
| Expiration Date of License or Certification: 12/31/2023 | Expiration Date of License or Certification: 12/31/2023 |
| Inspection of Subject: ☐ Interior & Exterior ☒ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☒ Exterior Only ☐ None |
| Date of Inspection: 11/09/2022 | Date of Inspection: 11/9/2022 |

**GP RESIDENTIAL**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2AD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE                                   3/2007

## Supplemental Addendum

File No. 221109226

| Borrower | NA | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 413 the Fenway | | | | | |
| City | River Edge | County | Bergen | State | NJ | Zip Code | 07661 |
| Lender/Client | Cohn Lifland Pearlman Herrmann & Knopf LLP | | | | | |

Appraiser Compensation
- The compensation for this appraisal assignment is $750.
- Cohn Lifland Pearlman Herrmann & Knopf LLP

Highest and Best Use

Fannie Mae will only purchase or securitize a mortgage that represents the highest and best use of the site as improved. If the current improvements clearly do not represent the highest and best use of the site as an improved site, it must be indicated on the appraisal report.

The appraiser determines highest and best use of a site as the reasonable and probable use that supports the highest present value on the effective date of the appraisal. For improvements to represent the highest and best use of a site, they must be legally permitted, financially feasible, and physically possible, and must provide more profit than any other use of the site would generate. All of those criteria must be met if the improvements are to be considered as the highest and best use of a site.

The appraiser's highest and best use analysis of the subject property should consider the property as it is improved. This treatment recognizes that the existing improvements should continue in use until it is financially feasible to remove the dwelling and build a new one, or to renovate the existing dwelling. If the use of comparable sales demonstrates that the improvements are reasonably typical and compatible with market demand for the neighborhood, and the present improvements contribute to the value of the subject property so that its value is greater than the estimated vacant site value, the appraiser should consider the existing use as reasonable and report it as the highest and best use.

The appraiser considers the highest and best use for the subject property to be as improved.

Appraiser Competency: The appraiser is familiar with the subjects location and has completed a substantial number of residential appraisals for mortgage purposes in the subjects neighborhood over the past 20 years.

The utilities were on and appeared to be in functional order at the time of inspection.

• URAR : Sales Comparison Analysis - Summary of Sales Comparison Approach
The final value estimate for the subject property does not represent the predominant value for residential properties in this market area, as shown on page 1 of the report. The subject property is within the stated price range for homes in this area; and the fact that the subject property does not represent the predominant value has no adverse effect on the subjects value or marketability.

All value affecting dissimilarities were adjusted according to market reaction.

GLA adjustments were made at $75/ sf based on a matched pair analysis.

The estimated depreciated costs of some elements of comparison including adjustments for garage, basement, deck, gazebo, patio were utilized for adjustments.

Condition adjustments for average Versus very good condition homes were made at 10% based on a matched pair analysis.

Market values were increasing at a rate of approximately 1% per month from the 1st Qtr of 2021 until the 4th Qtr of 2021 then appears to have stabilized in the 1st Qtr of 2022. Therefore, time adjustments were applied accordingly.

SALES COMPARISON ANALYSIS RECONCILIATION:

The appraiser comparable search began within the described neighborhood boundaries for sales within the prior three months of the effective date of the appraisal which yielded no sales. The Gross living areas were obtained from the Bergen County Tax Board web site.

The appraiser has included three closed sales located within the subject city.

The adjusted sale range of the comparables is $510,675 to $524,325. The appraiser has considered comparables 2 ( similar in location, quality,style, age and condition) and 3 (similar location, GLA, room count, style and age)  to be the most reliable indicators of market value.

The appraiser has concluded that the estimated value via the sales comparison is $520,000.

Final Reconciliation
The sales comparison approach is used and relied upon within this assignment to conclude credible results. In this market, residential properties are purchased primarily for owner-user utility and the sales comparison approach best reflects this market motivation.

## Supplemental Addendum

File No. 221109226

| Borrower | NA | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 413 the Fenway | | | | | | |
| City | River Edge | County | Bergen | | State | NJ | Zip Code | 07661 |
| Lender/Client | Cohn Lifland Pearlman Herrmann & Knopf LLP | | | | | | |

The overall quality of the data is good. Comparables 1-3 are located in the immediate neighborhood. I was able to confirm the terms/conditions of the sales with at least one agent/broker related to the transaction.
I did not consider this data set to have any significant weaknesses. It provides a very reliable indication of value for this assignment.

The cost approach is not necessary to conclude credible results for this assignment. The typical buyer in this market does not consider the alternative of developing a site him/herself vs. purchasing home already built. As noted in the H&BU analysis, it is not financially feasible to develop a vacant site at this time; the lack of feasibility and recent land sales in the neighborhood further weakens this approach's reliability. The data available for the use in the sales comparison approach is so superior that the cost approach was given little consideration, and only in a supporting role.

The income approach is not necessary to conclude credible results for this assignment. The subject has been updated and is well maintained; as noted in the H&BU analysis, the typical buyer for this property is an owner-user; owner-users rely on the sales comparison approach as their primary means for evaluating a purchase: income revenue is not a significant owner-user motivation. Therefore, the income approach is not completed.

### DISCLOSURE AND DISCUSSION OF PAIRED DATA ANALYSES AND ADJUSTMENTS:

Not all adjustments in the Sales Comparison Approach can be directly extracted or supported by the available market data with a high degree of accuracy. Some adjustments have an element of subjectivity and professional judgment which the appraiser has applied based on prior observations of the reactions of typical/knowledgeable buyers' and sellers' in the marketplace. This method is a standard and well accepted practice within the appraisal industry. All interested parties are encouraged to have an understanding of basic valuation practices when appraising atypical or complex properties;or where there is an extreme absence of like elements of comparison; or in instances where the market data is inconsistent with which to draw better supported adjustments and overall value conclusions. Individual adjustments can not be relied on independently.

Appraising Residential Properties, 4th Edition, Appraisal Institute, Page 342, "Limitations of Paired Data Analyses" states:

"...This brief discussion of paired data analysis may seem to suggest that identifying the effects of property differences from market data is a straightforward procedure that can produce accurate, complete mathematical results in all appraisals. Such an impression would be misleading. Appraisers develop an opinion of market value by applying their judgment to the analysis and interpretation of data. Paired data analysis is a tool that an appraiser can apply to market data in some circumstances. When used in conjunction with other analytical tools, this type of analysis supports and guides the appraiser's judgment, but it does not take its place.

Perfect sets of comparables that vary in a single, identifiable respect are rarely found. Because properties that are sufficiently similar to the subject are usually limited in number, the decision to apply paired data analysis in a given situation is a matter of judgment. Often the sampling size may not be larger enough to provide a solid statistical foundation for the appraiser's conclusions.

Nevertheless, paired data procedures are important valuation tools that appraisers should use whenever possible. Identifying matched data sets and isolating the effects of variables is a practical methodology for studying market data, even if a comprehensive paired data analysis cannot be performed. When only a narrow sampling of market data is available, which would not lend itself to statistical analysis, paired data analysis can be used to test the results of other analytical procedures..."

For example, say an appraiser finds three sales that are nearly identical in a tract/production built subdivision, with the sole exception being that one sale has a three-car garage, while the others have two-car garages, yet their was no selling price differences.

Another example is when the available data has multiple dissimilarities with different prices, it becomes virtually impossible to determine how much each individual variable has contributed to the price differences. In theory and in perfect markets, using a market grid and paring the sales should result in a relatively close value range after the extracted and applied adjustments.

The Appraising Residential Properties, 4th Edition, Appraisal Institute, Page 344, "Other Quantitative Adjustment Techniques further states that in " instances where paired sales analysis is not conclusive, the appraiser may apply judgment to resolve the problem." The adjustments resulting from the appraiser's judgment is based on a study and understanding of buyer preferences. It further suggests that cost and depreciated cost data may be used with the appraiser arriving at the value contribution of certain amenities.

Additional Comments:
The appraiser has no knowledge of any other title transfers of the subject or comparables other than cited above for the past three years. Prior sales information is obtained from county tax records, specifically (Ocean County Tax Board) and/or from the local multiple listing service (MLS) and assumed to be correct, but not guaranteed. MLS information is usually updated within days of a pending contract or sale, however, county tax records/NJACTB often take longer than 30 days to update their websites. Other than these published sources, it is beyond the scope of this appraisal, nor is it the responsibility of the appraiser(s), to procure title searches for the subject property, comparables or common amenities for interim transfers to insure total accuracy.
This appraisal report IS NOT a home inspection. The appraiser only performed a cursory, visual, non-invasive inspection of the subject property. This appraisal cannot and should not be relied upon to disclose conditions and/or defects in the property with the valuation rendered under the Extraordinary Assumption that all components are both code and insurance compliant. This appraisal can NOT and should NOT be relied on for reproduction or replacement cost figures for insurance purposes.
It beyond the scope of the appraisal to insure that all improvements, including but not limited to the main structure, garage or porch conversions, additions, etc., to the subject property were properly permitted or are in full compliance with all applicable zoning laws and regulations. All interested parties are encouraged to obtain this information from either the property owner and/or the applicable municipal zoning and/or building department(s). The appraiser has a right to assume and hereby makes the Extraordinary Assumption that all additions, conversions and/or other on-site structures have been properly permitted, are of a legal nature per Assumptions & Limiting Conditions #1 herein, and their 'legal' verification is outside the Scope of Work. Garage or porch conversions are generally included in the GLA if they are ducted for central heat and air and finished to a similar standard as the main structure. Inclusion of additions/conversion in property appraiser tax records is not always a verifiable source as to their legality, zoning or code compliance.

**Supplemental Addendum**

File No. 221109226

| Borrower | NA |
|---|---|
| Property Address | 413 the Fenway |
| City | River Edge | County | Bergen | State | NJ | Zip Code | 07661 |
| Lender/Client | Cohn Lifland Pearlman Herrmann & Knopf LLP |

*The site value estimate and Cost Approach are not considered well supported due to an extreme lack of vacant lot sales and the vast inconsistency of selling prices of improved sales on which to apply the extraction or allocation method. Further complicating the Cost Approach is the difficulty in identifying all forms of depreciation.

Any and all lot size, location, topography and view adjustments are based on overall characteristics that are often offsetting, and not size alone. Most lots within platted developments have surplus (not excess) land with varying sizes and configurations that do not significantly contribute or detract to/from their final selling prices unless an analysis indicates otherwise.
Any adjustments for upgrades, built-ins, updating, remodeling or enhanced effective ages are 'estimated' at their contributory value (not necessarily cost) by viewing any and all MLS photos and comments or based on verbal representations by participating Realtors or other parties to the transaction. In cases where there are limited verification sources the Appraiser(s) may make an 'extraordinary assumption' as to certain physical components or condition ratings

-Reasonable Exposure Time: Exposure time is always presumed to precede the effective date of the appraisal. It is the estimated length of time the property would have been offered on the market, prior to the hypothetical sale, at the appraised value, on the effective date of the appraisal. It is a retrospective estimate based on an analysis of past events assuming a competitive and open market. This includes not only adequate, sufficient and reasonable time, but adequate, sufficient and reasonable effort. It is often expressed as a range and is based on the following:
1. Statistical information about days on the market, most commonly obtained from the local Multiple Listing Service.
2. Information gathered through sales verification.
3. Interviews with market participants.
- Under current market conditions, the reasonable exposure time for the subject property is generally  one to three months unless otherwise noted. This is based on the analysis of current market trends in the general area and takes into account the size, condition and price range of the subject property and surrounding area. It presupposes that the listed price would be at or near the appraised value. It also assumes aggressive and professional marketing by reputable local real estate offices.
-When available, the appraiser also discloses the LP:SP Ratio and Actual & Cumulative Days on Market of the comparable sales within the Sales Comparison Approach 'Grid' and is taken directly from the MLS listing and assumed to be correct, but can not be guaranteed.

| Borrower | NA | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 413 the Fenway | | | | | |
| City | River Edge | County | Bergen | State | NJ | Zip Code 07661 |
| Lender/Client | Cohn Lifland Pearlman Herrmann & Knopf LLP | | | | | |



Location Map

Aerial Map

| Borrower | NA | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 413 the Fenway | | | | | | |
| City | River Edge | County | Bergen | | State | NJ | Zip Code | 07661 |
| Lender/Client | Cohn Lifland Pearlman Herrmann & Knopf LLP | | | | | | |



| Borrower | NA | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 413 the Fenway | | | | | |
| City | River Edge | County | Bergen | State | NJ | Zip Code 07661 |
| Lender/Client | Cohn Lifland Pearlman Herrmann & Knopf LLP | | | | | |



Prepared for: Mid-Atlantic Appraisal Inc.
413 the Fenway
River Edge, NJ 07661

**MAP DATA**

FEMA Special Flood Hazard Area: No
Map Number: 34003C0191H
Zone: X
Map Date: August 28, 2019
FIPS: 34003

**MAP LEGEND**

Areas inundated by 500-year flooding
Areas inundated by 100-year flooding
Velocity Hazard
Protected Areas
Floodway
Subject Area



## 413 The Fenway, River Edge, NJ 07661-1842, Bergen County
**APN: 52-00909-0000-00015    CLIP: 3935503592**

| | Beds | Full Baths | Half Baths | Sale Price | Sale Date |
|---|---|---|---|---|---|
| | **N/A** | **N/A** | **N/A** | **N/A** | **07/20/2002** |
| | Bldg Sq Ft | Lot Sq Ft | Yr Built | Type | |
| | **1,280** | **6,599** | **1940** | **N/A** | |

### OWNER INFORMATION

| | | | |
|---|---|---|---|
| Owner Name | **Aslannian** | Tax Billing Zip | **07661** |
| Tax Billing Address | **413 The Fenway** | Tax Billing Zip+4 | **1842** |
| Tax Billing City & State | **River Edge, NJ** | Owner Occupied | **Yes** |

### LOCATION INFORMATION

| | | | |
|---|---|---|---|
| Township | **River Edge Boro** | Block # | **909** |
| School District | **52** | Lot # | **15** |
| Zoning | **R-1** | Flood Zone Code | **X** |
| Census Tract | **482.00** | Flood Zone Date | **08/28/2019** |
| Carrier Route | **C005** | Flood Zone Panel | **34003C0191H** |

### TAX INFORMATION

| | | | |
|---|---|---|---|
| Tax ID | **52-00909-0000-00015** | Tax Appraisal Area | **52** |
| Alt APN | **031170** | Lot Number | **15** |
| % Improved | **36%** | Block ID | **909** |
| Tax Area | **52** | | |

### ASSESSMENT & TAX

| | | | |
|---|---|---|---|
| Assessment Year | 2022 | 2021 | 2020 |
| Assessed Value - Total | **$282,200** | **$282,200** | **$282,200** |
| Assessed Value - Land | **$179,200** | **$179,200** | **$179,200** |
| Assessed Value - Improved | **$103,000** | **$103,000** | **$103,000** |
| YOY Assessed Change (%) | **0%** | **0%** | |
| YOY Assessed Change ($) | **$0** | **$0** | |

| Tax Year | Total Tax | Change ($) | Change (%) |
|---|---|---|---|
| 2019 | **$9,787** | | |
| 2020 | **$10,075** | **$288** | **2.94%** |
| 2021 | **$10,235** | **$161** | **1.6%** |

### CHARACTERISTICS

| | | | |
|---|---|---|---|
| Lot Frontage | **60** | Estimated Lot Area | **6,599** |
| Lot Depth | **110** | Estimated Building Square Feet | **1,280** |
| Estimated Lots Acres | **0.1515** | Year Built | **1940** |

### SELL SCORE

| | | | |
|---|---|---|---|
| Rating | **Low** | Value As Of | **2022-11-06 04:39:18** |
| Sell Score | **497** | | |

### ESTIMATED VALUE

| | | | |
|---|---|---|---|
| RealAVM™ | **$552,600** | Confidence Score | **65** |
| RealAVM™ Range | **$484,000 - $621,300** | Forecast Standard Deviation | **12** |
| Value As Of | **10/24/2022** | | |

(1) RealAVM™ is a CoreLogic® derived value and should not be used in lieu of an appraisal.

(2) The Confidence Score is a measure of the extent to which data, property information, and comparable sales support the property valuation analysis process. The confidence score range is 50 - 100. Clear and consistent quality and quantity of data drive higher confidence scores while lower confidence scores indicate diversity in data, lower quality and quantity of data, and/or limited similarity of the subject property to comparable sales.

(3) The FSD denotes confidence in an AVM estimate and uses a consistent scale and meaning to generate a standardized confidence metric. The FSD is a statistic that measures the likely range or dispersion an AVM estimate will fall within, based on the consistency of the information available to the AVM at the time of estimation. The FSD can be used to create confidence that the true value has a statistical degree of certainty.

### LAST MARKET SALE & SALES HISTORY

| | | | |
|---|---|---|---|
| Recording Date | **07/30/2002** | Deed Type | **Deed (Reg)** |
| Settle Date | **07/20/2002** | Owner Name | **Aslannian** |
| Document Number | **8495-306** | Seller | **Owner Record** |

**Property Details**  Courtesy of Jamie Travis, Monmouth Ocean Regional REALTORS

Generated on: 11/09/22

The data within this report is compiled by CoreLogic from public and private sources. The data is deemed reliable, but is not guaranteed. The accuracy of the data contained herein can be independently verified by the recipient of this report with the applicable county or municipality.

Page 1/2



| Recording Date | 03/12/2019 | 07/30/2002 | 01/05/1998 |
|---|---|---|---|
| Nominal | Y | | Y |
| Buyer Name | Aslanian Living Trust | Aslanian Vatche | May Richard W |
| Seller Name | Aslanian Vatche | Owner Record | May Erwin & Emily |
| Document Number | 3197-32 | 8495-306 | 8031-322 |
| Document Type | Deed (Reg) | Deed (Reg) | Deed (Reg) |

**MORTGAGE HISTORY**

| Mortgage Date | 05/12/2016 | 05/21/2014 | 03/01/2007 | 08/28/2006 |
|---|---|---|---|---|
| Mortgage Amount | $80,000 | $442,079 | $376,000 | $300,000 |
| Mortgage Lender | Discover Bk | Bank Of America | Sullivan Fin'l Svcs | Superior Mtg |
| Mortgage Type | Refi | Refi | Refi | Refi |

**FORECLOSURE HISTORY**

| Document Type | Lis Pendens | Lis Pendens | Lis Pendens |
|---|---|---|---|
| Foreclosure Filing Date | 08/30/2021 | 02/01/2018 | 02/01/2018 |
| Recording Date | 09/20/2021 | 08/16/2019 | 01/17/2019 |
| Document Number | 147266 | 53989 | 4192 |
| Book Number | 4383 | 3325 | 3157 |
| Page Number | 1243 | 759 | 1930 |
| Original Doc Date | 03/01/2007 | | |
| Original Book Page | 16599000204 | | |
| Lien Type | Mtg | Other | Other |

**PROPERTY MAP**

*Lot Dimensions are Estimated

Property Details  Courtesy of Jamie Travis, Monmouth Ocean Regional REALTORS

The data within this report is compiled by CoreLogic from public and private sources. The data is deemed reliable, but is not guaranteed. The accuracy of the data contained herein can be independently verified by the recipient of this report with the applicable county or municipality.

Generated on: 11/09/22

Page 2/2

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Borrower | NA |
| Property Address | 413 the Fenway |
| City | River Edge | County | Bergen | State | NJ | Zip Code | 07661 |
| Lender/Client | Cohn Lifland Pearlman Herrmann & Knopf LLP |



**Subject Front**

413 the Fenway
| Sales Price | N/A |
| Gross Living Area | 1,280 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | Average |
| View | Residential |
| Site | 6,600 sf |
| Quality | Average |
| Age | 82 |



**Subject Front**



**Subject Street**

| Borrower | NA |
|---|---|
| Property Address | 413 the Fenway |
| City | River Edge | County | Bergen | State | NJ | Zip Code | 07661 |
| Lender/Client | Cohn Lifland Pearlman Herrmann & Knopf LLP |



### Comparable 1
71 Lakeview St

| | 0.50 miles S |
|---|---|
| FILE0.jpg | 530,000 |
| Borrower/Client | 1,811 |
| Owner | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Average |
| View | Residential |
| Site | 5,000 sf |
| Quality | Average |
| Age | 80 |



### Comparable 2
180 Howland Ave

| Prox. to Subject | 0.14 miles S |
|---|---|
| Sales Price | 550,000 |
| Gross Living Area | 1,629 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Average |
| View | Residential |
| Site | 8640 sf |
| Quality | Average |
| Age | 82 |



### Comparable 3
409 the Fenway

| Prox. to Subject | 0.01 miles SW |
|---|---|
| Sales Price | 578,000 |
| Gross Living Area | 1,280 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Average |
| View | Residential |
| Site | 8,985 sf |
| Quality | Average |
| Age | 82 |

*QUALIFICATIONS OF*

*CHRISTOPHER S. BELON*

*REAL ESTATE APPRAISER AND CONSULTANT*

### EDUCATION BACKGROUND

Marlboro High School, Marlboro, New Jersey

Brookdale Community College
 Appraising Real Property

Rutgers University, New Brunswick, New Jersey

 Appraisal Institute
  Standards of Professional Practice Part A and Part B

 Appraisal Institute
  Introduction to Appraising Real Property

 Appraisal Institute
  Applied Residential Property Valuation

Business Learning Center, Aberdeen, New Jersey
 Fundamentals of Real Estate Appraisal

Weichert Real Estate School
 Real Estate Sales Licensing Course

### PROFESSIONAL AFFILIATIONS

State of New Jersey Certified General Appraiser
 License # 42RG00227700

State of New Jersey Licensed Real Estate Broker-Salesperson
 License # 8938016

### ASSOCIATION MEMBERSHIP

Monmouth County Board of Realtors

## GENERAL EXPERIENCE

During the past twenty years, I have engaged exclusively in residential  and commercial real estate appraising on a full time basis.  I have completed in excess of 2,500 residential appraisals for mortgage and market value purposes. I have also been engaged in appraising a variety of commercial, special purpose and industrial properties.

2001-Present          Vice president, Mid-Atlantic Appraisal, Inc.
                      273 Highway 34, Colts Neck, New Jersey  07722

1992 – 2001           Senior Appraiser, Mid-Atlantic Appraisal, Inc.
                      21 Route 537 East, Colts Neck, New Jersey   07722

1991 – 1992           Staff Appraiser, Belon Appraisal Group
                      260 Line Street, Easton, Pennsylvania   18044

## State Of New Jersey
### New Jersey Office of the Attorney General
### Division of Consumer Affairs

THIS IS TO CERTIFY THAT THE

Real Estate Appraisers Board

HAS CERTIFIED

CHRISTOPHER S. BELON
134 Cranberry Ave
Bay Head NJ  08742

FOR PRACTICE IN NEW JERSEY AS A(N):  Certified General Appraiser

12/15/2021  TO  12/31/2023
VALID

42RG00227700
LICENSE/REGISTRATION/CERTIFICATION #



**GREAT AMERICAN®**
**INSURANCE GROUP**

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED
AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒   Great American Assurance Company

Note: The Insurance Company selected above shall herein be referred to as the **Company**.

Policy Number:    **RAP4115440-22**                Renewal of:    **RAP4115440-21**

Program Administrator:    **Herbert H. Landy Insurance Agency Inc.**
**100 River Ridge Drive, Suite 301  Norwood, MA 02062**

---

Item 1. **Named Insured**:    **Christopher Belon**

Item 2. **Address**:    **134 Cranberry Ave**
City, State, Zip Code:    **Bay Head, NJ 08742**

Item 3. **Policy Period**: From ___**01/20/2022**___ To ___**01/20/2023**___
              *(Month, Day, Year)*    *(Month, Day, Year)*
(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured** as stated in Item 2.)

Item 4. **Limits of Liability**:

A. $ ___**1,000,000**___   **Damages** Limit of Liability – Each **Claim**

B. $ ___**1,000,000**___   **Claim Expenses** Limit of Liability – Each **Claim**

C. $ ___**2,000,000**___   **Damages** Limit of Liability – Policy Aggregate

D. $ ___**2,000,000**___   **Claim Expenses** Limit of Liability – Policy Aggregate

Item 5. **Deductible** (Inclusive of **Claim Expenses**):

A. $ ___**0.00**___   Each **Claim**

B. $ ___**0.00**___   Aggregate

Item 6. **Premium**: $    **650.00**                **Additional 0.6% NJ Guaranty Fund Surcharge $3.90**

Item 7. **Retroactive Date** (if applicable):    **01/20/2012**

Item 8. **Forms, Notices and Endorsements attached**:
**D42100 (03/15)  D42300 NJ (05/13)   IL7324 (07/21)
D42408 (05/13)  D42402 (05/13)  D42412 (03/17)  D42413 (06/17)
D42414 (08/19)**

_Becky A. Ferguson_
Authorized Representative

D42101  (03/15)                                                    Page 1 of 1